## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22, et al.,** | **8:21CV263** |
| **Plaintiffs,** | |
| **vs.** | **ORDER** |
| **LANGER ELECTRIC COMPANY, INC.,** | |
| **Defendant.** | |

This matter comes before the Court on the following motions related to garnishment proceedings initiated by Plaintiffs in an attempt to collect upon the judgment entered in this case against Defendant, Langer Electric Company, Inc. ("Langer Electric"):

- Langer Electric's Motion to Quash Summons and Orders of Garnishment, or Alternatively to Vacate Pending Garnishment Orders (Filing No. 109);
- Plaintiffs' Motion for Order for Garnishee [Langer Properties and Development LLC] to Pay Funds into Court (Filing No. 137);
- Langer Electric's Motion to Quash Summons and Orders of Garnishment, or Alternatively, to Vacate Pending Garnishment Orders, and to Compel Plaintiffs' Counsel to Use the Official Forms Prescribed by the Nebraska Supreme Court and for Attorney's Fees (Filing No. 144);
- Plaintiffs' Motion for Order for Garnishee [Bank of the Valley] to Pay Funds into Court (Filing No. 150);
- Plaintiffs' Application for Determination of Garnishee [Langer Properties and Development LLC] Liability (Filing No. 152); and
- Garnishee Langer Properties and Development LLC's Motion for Leave to Amend Answers to Garnishment Interrogatories (Filing No. 172).

### BACKGROUND

On July 14, 2021, Plaintiffs commenced this action against Langer Electric pursuant to § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), for breach of a labor agreement, and pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, to collect fringe benefit contributions from Langer Electric due and owing to the Plaintiffs. (Filing No. 1). On February 7, 2022, the parties entered into a settlement agreement, pursuant to which Langer Electric agreed

to submit to a payroll audit. (Filing No. 31; Filing No. 31-1). The payroll audit findings were finalized on May 26, 2022, revealing a delinquency owed by Langer Electric to Plaintiffs in the amount of $805,380.95, consisting of $680,841.15 in principal, $60,468.94 in interest, and $64,070.86 in liquidated damages. (Filing No. 31). Langer Electric elected to exercise its option under the settlement agreement to enter into a payment plan and agreed to entry of a judgment against it in the amount of $834,410.48. (Filing No. 31-3). Pursuant to the parties' Joint Motion for Confession of Judgment (Filing No. 31), on August 8, 2022, the Court entered judgment against Langer Electric for Plaintiffs in the amount of $834,410.48. (Filing No. 32).

On September 12, 2022, to collect upon the judgment, Plaintiffs began filing affidavits and praecipes in garnishment for various entities and individuals that may have property of or be indebted to Langer Electric. See, e.g., Filing No. 34. On November 17, 2022, Plaintiffs moved the Court for an order of examination in aid of execution pursuant to Fed. R. Civ. P. 69(a) and Neb. Rev. Stat. § 25-1565. (Filing No. 42). On November 18, 2022, the Court entered an order requiring Christopher Langer ("Mr. Langer"), as principal and owner of Langer Electric, to appear for a debtor's examination before the undersigned magistrate judge on January 5, 2023. (Filing No. 43). On November 30, 2022, Langer Electric's counsel moved to withdraw from her representation, representing to the Court that her client consented to her withdrawal and intended to secure other counsel to the extent it required additional representation. (Filing No. 45). On December 1, 2022, the Court granted Langer Electric's counsel's motion to withdraw and ordered her to serve the Court's order upon her client. (Filing No. 46). On December 19, 2022, withdrawing counsel filed a certificate of service showing she served the Court's order by certified mail, with a return receipt signed by Mr. Langer on December 12, 2022. (Filing No. 52).

On December 30, 2022, new counsel entered an appearance for Langer Electric and moved to vacate the Court's order scheduling the January 5, 2023, debtor's examination, asserting Mr. Langer was not the judgment debtor and arguing Plaintiffs' document requests were overbroad. (Filing No. 53). Following a telephonic hearing held on the motion on January 4, 2023, the Court found Plaintiffs' document requests were not overbroad, and that Mr. Langer, as the principal and owner of Langer Electric, was properly subjected to Plaintiffs' discovery requests in aid of execution. The Court did cancel the January 5, 2023, debtor's examination so the parties could meet and confer on a mutually agreeable date and time for the examination. The Court also directed the parties to meet and confer regarding what documents Langer Electric would produce

prior to the rescheduled debtor's examination, and the necessity and scope of a protective order. ([Filing No. 58](#)).

On January 13, 2023, Plaintiffs filed a Notice to Court Regarding Order to Meet and Confer ([Filing No. 59](#)), outlining the parties' largely unsuccessful meet and confer.  After reviewing Langer Electric's Response ([Filing No. 68](#)) to Plaintiffs' Notice, the Court entered an Order on January 17, 2023, rescheduling the debtor's examination of Mr. Langer, as principal and owner of Langer Electric, for January 24, 2023. The Court further ordered Langer Electric to produce all documents the Court previously ordered it to produce in its November 18, 2022, Order ([Filing No. 43](#)), by January 20, 2023.  The Court further ordered the parties to, by January 19, 2023, jointly move for a protective order, or if they could not agree, separately move for protective orders. ([Filing No. 69](#)).  Unsurprisingly, the parties did not jointly agree on a protective order, and the Court ultimately entered the protective order proposed by Langer Electric.  ([Filing No. 75](#)).

On January 24, 2023, the parties appeared as ordered for the debtor's examination.  The parties required the Court's assistance to resolve certain disputes that arose during the examination. ([Filing No. 86](#)).  One of the disputes pertained to records produced by Langer Electric showing that on December 30, 2021, Langer Electric paid approximately $1,200 in closing costs and over $100,000 to a title company in checks signed by Mr. Langer.  Mr. Langer testified during his examination with Plaintiffs' counsel that he could not recall what those payments was for.  After further examination by the Court, Mr. Langer testified he was "flustered" earlier in his examination, but recalled the payments were for a loan from Langer Electric to Langer Properties and Development, LLC ("Langer Properties").  Mr. Langer testified his wife is the managing partner of Langer Properties and that he is a member.  Langer Properties owns real estate that Langer Electric rents pursuant to a lease.  Mr. Langer testified the six-figure payment was an unsecured loan from Langer Electric to Langer Properties that has a "term" to be paid back, but "it just hasn't been set yet."  ([Filing No. 86](#) at 13:20-19:20).

Following the debtor's examination, Plaintiffs continued to file affidavits and praecipes for garnishment, see Filing Nos. 78-79 and 88-97, and the Clerk of Court issued summons and orders of garnishment as requested, see Filing Nos. 80-81 and 98-107.  These garnishment papers advised and instructed the garnishees that (1) judgment was entered for Plaintiffs against Langer Electric for the total sum of $834,410.48; (2) that Langer Electric was currently indebted to Plaintiffs in the amount of $779,056.59 because Plaintiffs had obtained partial satisfaction of the judgment; (3)

the garnishee is "obligated to hold the property of every description and the credits of the Defendant in your possession or under your control at the time of the service of this Summons and Order and Interrogatories until further direction from the Court"; (4) that the garnishee should not, unless otherwise ordered by the court, pay any debt "owed the Defendant when this Summons and Order was served or at anytime thereafter until the return date hereof," and should not "deliver, sell or transfer, or recognize any sale or transfer of, any personal property or effects of the Defendant that were in your possession or control when this Summons and Order was served or at anytime thereafter until the return date hereof," and if such payment is made, it is void; (5) if the garnishee owes Langer Electric "a debt payable in money and subject to this garnishment in excess of the amount set forth in the first paragraph of this garnishment, hold only the amount set forth in the first paragraph of this Summons and Order and release all additional funds or property to Defendant"; (6) if the garnishee owes a "debt payable in money and subject to this garnishment" the garnishee "may obtain discharge from liability to Defendant for that amount by paying such money to the Court" pursuant to Neb. Rev. Stat § 25-1027; (7) if the garnishee fails to answer the attached interrogatories, the garnishee will "be presumed to owe the Plaintiffs the full amount of their claim"; and (8) the garnishee is required to answer interrogatories and file them in this Court within 10 days of service, and that penalties may be imposed for willful falsification.  (Filing No. 79; Filing No. 80).  Plaintiffs also attached Notices advising the recipients of exemptions regarding wages and certain types of funds (Filing No. 79-3) and forms for the recipients to request a hearing on garnishment (Filing No. 79-4).

> Plaintiffs' Interrogatory 1 attached to these garnishments asked the garnishees:
>
> At the time of service of garnishment, or at any time thereafter until the return date stated in the Summons of Garnishee, have you had in your possession or under your control any property, money (excluding wages, salary and commission), or effects of the judgment debtor? If yes, please identify with particularity.
>
> Interrogatory 2(a) asked the garnishees:
>
> At the time of service of the garnishment, or at any time thereafter until the return date stated in the Summons of Garnishee, did you owe the judgment debtor any money (including wages, salary and commission) or do you owe the judgement debtor any now?

And, Interrogatory 2(b) asked the garnishees, "If not yet due, when will it become due?"  (See, e.g., Filing No. 79-2).

On January 31, 2023, Langer Electric filed a motion (Filing No. 109) to quash the summons and/or vacate the orders of garnishment to Bank of the Valley and Langer Properties contained at Filing Nos. 80 and 81, and to Todd Royer, JP Morgan Chase Bank, N.A., American Express Company, Jamie Smith, Sarah Kirkpatrick, Jill Jones, Crystal Gordon, Tanner Hall, Thomas Berney, and Seth Neben, contained at Filing Nos. 98 through 107. Langer Electric contends the summons should be quashed and orders of garnishment should be vacated because Plaintiffs' interrogatories are "misleading and inconsistent with Nebraska law." Langer Electric takes issue with Plaintiffs' interrogatories because they request "the garnishee to identify and hold funds and property in its possession as of the service date and any funds and property that it may be holding in the ten days following the service date," which it characterizes as an impermissible continuing lien. (Filing No. 110 at p. 3).

On February 6, 2023, garnishee Bank of the Valley answered it had $310.75 in a checking account belonging to the judgment debtor. (Filing No. 113). Plaintiffs have filed a motion asking for the Court to order Bank of the Valley to set aside $310.75 and deliver the funds to the registry of the Court. (Filing No. 150). No party has filed a brief opposing Plaintiffs' motion, although Langer Electric has moved to quash the summons and vacate the order of garnishment to Bank of the Valley. See Filing No. 109 (seeking to quash/vacate Filing No. 80).

On February 6, 2023, Langer Properties filed its answers and objections to Plaintiffs' interrogatories via Mr. Langer as "owner." Langer Properties objected to Interrogatory 1 as inconsistent with Nebraska law, but subject to its objection, replied it had "no property, money, or effects of the judgment debtor in its possession or control at the time of service of garnishment." (Filing No. 115 at p. 2). Langer Properties also objected to Interrogatories 2(a) and 2(b) as "inconsistent with Nebraska law," but subject to its objections, Langer Properties replied it "owed the judgment debtor the amount of $402,457.00 at the time of service of the garnishment" and that "there is no current due date established for the amount owed." (Filing No. 115 at p. 3). On February 14, 2023, based upon those interrogatory answers, Plaintiffs filed a motion asking the Court to order Langer Properties to set aside $402,457.00 and, within twenty (20) days of any amount of such indebtedness becoming due, available, or otherwise payable to Langer Electric, deliver those funds to the registry of court pursuant to Fed. R. Civ. P. 69(a) and Neb. Rev. Stat. § 25-1029. (Filing No. 137). Langer Electric opposes that motion because the debt was not "due" on the date the garnishment was served. (Filing No. 155). Then, on February 15, 2023, Mr.

Langer, as owner of Langer Properties, executed different answers to the garnishment interrogatories, answering "No" to both interrogatories without identifying the $402,457.00 debt to Langer Electric, and filed those answers on February 17, 2023. (Filing No. 140). One month later, Langer Properties filed a motion (Filing No. 172) to amend its answers to garnishment interrogatories, asking the Court to enter an order finding Langer Properties' first answers filed on February 6, 2023, (Filing No. 115), "supersede" the second set of answers filed on February 17, 2023, (Filing No. 140), because the latter were filed in error.

On February 7, 2023, Plaintiffs filed additional praecipes for garnishment, Filing Nos. 116-121, and on February 8, 2023, the Clerk of Court issued summons and orders of garnishment as requested, see Filing Nos. 122-127. On February 21, 2023, Langer Electric filed a motion to quash summons and/or vacate the February 8, 2023, orders of garnishment contained at Filing Nos. 122 through 127 to American National Bank, NGC Group, Inc., U.S. Bank National Association, Cobalt Credit Union, Mr. Langer, and Wells Fargo USA Holdings, Inc. As with the prior summonses, these summonses similarly advise garnishees that they are "obligated to hold the property of every description and the credits of the Defendant in your possession or under your control at the time of the service of this Summons and Order and Interrogatories until further direction from the Court." (Filing No. 122 at pp. 5-6). Langer Electric argues Plaintiffs' garnishment papers continue to be misleading and inconsistent with Nebraska law and moves the Court to require Plaintiffs to use the garnishment forms prescribed by the Nebraska Supreme Court and for an award of attorneys' fees. (Filing Nos. 144-145).

On February 23, 2023, Plaintiffs filed an Application for Determination of Garnishee Liability (Filing No. 152) as to Langer Properties. Plaintiffs request an order directing Langer Properties to appear before the Court for a hearing to determine its liability, or, alternatively, finding that Langer Properties is liable to Plaintiffs in the amount of at least $402,457.00. Langer Properties lodges a variety of objections to this motion, but ultimately requests that the Court hold a jury (or bench) trial and find it is not liable as garnishee and release it from this case, with prejudice. (Filing No. 168).

## ANALYSIS

### I.      Motions to Quash and Vacate Summons and Garnishment Orders

Langer Electric has filed two motions to quash summons and/or vacate orders of garnishment as to eighteen garnishees. (Filing No. 109; Filing No. 144). Langer Electric contends the summonses should be quashed and orders of garnishment should be vacated because Plaintiffs' interrogatories are "misleading and inconsistent with Nebraska law." (Filing No. 110 at pp. 1-4). Langer Electric also requests a Court order requiring Plaintiffs to use the garnishment forms promulgated by the Nebraska Supreme Court. (Filing No. 145 at pp. 3-5). Langer Electric also requests an award of attorneys' fees for Plaintiffs' "blatant disregard of the law." (Filing No. 145 at p. 7).

The Federal Rules of Civil Procedure provide that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Under Nebraska law, "Garnishment is a legal aid in the execution of a judgment; it is a method by which a judgment creditor can recover against a third party for the debt owed by a judgment debtor" and "is in effect an action by a judgment debtor in the garnishor's name against the garnishee." *Florence Lake Invs., LLC v. Ber*g, 978 N.W.2d 308, 321 (Neb. 2022). Garnishment is a legal remedy unknown at common law, and is a purely statutory remedy. *Gerdes v. Klindt*, 570 N.W.2d 336, 341 (Neb. 1997).

Under Nebraska's garnishment statutes, a judgment creditor may, as garnishor, request that the court issue a summons of garnishment against any person or business which "has property of and is indebted to the judgment debtor." *Florence Lake Invs.*, 978 N.W.2d at 321 (quoting Neb. Rev. Stat. § 25-1056(1)). Because Plaintiffs are attempting to execute upon a judgment, Neb. Rev. Stat. § 25-1056(1) applies, which provides:

> In all cases when a judgment has been entered by any court of record and the judgment creditor or his or her agent or attorney has filed an affidavit setting forth the amount due on the judgment, interest, and costs in the office of the clerk of the court where the judgment has been entered and that he or she has good reason to and does believe that any person, partnership, limited liability company, or corporation, naming him, her, or it, has property of and is indebted to the judgment debtor, the clerk shall issue a summons which shall set forth the amount due on the judgment, interest, and costs as shown in the affidavit and require such person, partnership, limited liability company, or corporation, as garnishee, to answer written interrogatories to be furnished by the plaintiff and to be attached to such summons respecting the matters set forth in section 25-1026. . . .

Neb. Rev. Stat. § 25-1056(1). This statute permits a plaintiff to propound interrogatories to garnishees "respecting the matters set forth in section 25-1026," which in turn provides:

> The garnishee shall answer, under oath, all the interrogatories put to him touching the property of every description and credits of the defendant in his possession or under his control at the time of the service of the summons and interrogatories, and he shall disclose truly the amount owing by him to the defendant, whether due or not, and, in case of a corporation, any stock therein held by or for the benefit of the defendant, at the time of the service of the summons and interrogatories.

Neb. Rev. Stat. § 25-1026. "The summons shall be returnable within ten days from the date of its issuance and shall require the garnishee to answer within ten days from the date of service upon him or her." Neb. Rev. Stat. § 25-1056(1). The garnishee must then "hold the property of every description and the credits of the defendant in his or her possession or under his or her control at the time of the service of the summons and interrogatories until the further order of the court[.]" Id. "Thereafter, the service of the summons and interrogatories and all further proceedings shall be in all respects the same as is provided for in sections 25-1011 and 25-1026 to 25-1031.01 unless inconsistent with this section." Id. A garnishee may be discharged from liability to the defendant if the garnishee "chooses to 'pay the money owing to the defendant by [the garnishee]' into court." Florence Lake Invs., 978 N.W.2d at 321 (quoting Neb. Rev. Stat. § 25-1027). "A garnishee's liability is to be determined as of the time the garnishment summons is served." Id. at 322.

"Because the garnishment statutes are part of chapter 25, [the court] will view them under . . . general rules of statutory interpretation," which requires the court "to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible." ML Manager, LLC v. Jensen, 842 N.W.2d 566, 572 (Neb. 2014). "Statutory language is to be given its plain and ordinary meaning," and a court should "not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." Id. A court should also "give effect to all parts of a statute and avoid rejecting as superfluous or meaningless any word, clause, or sentence. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language." Id.

Langer Electric's first motion to quash takes issue with Plaintiffs' summonses and garnishment orders to Bank of the Valley and Langer Properties contained at Filing Nos. 80 and 81, and to Todd Royer, JP Morgan Chase Bank, N.A., American Express Company, Jamie Smith, Sarah Kirkpatrick, Jill Jones, Crystal Gordon, Tanner Hall, Thomas Berney, and Seth Neben,

contained at Filing Nos. 98 through 107. Langer Electric contends these garnishment papers are improper because they instruct garnishees not to pay any debts "owed the Defendant when this Summons and Order was served *or at anytime thereafter until the return date hereof*" (i.e., ten days after service of garnishment). (Filing No. 110 at pp. 2-3). Langer Electric also contends the garnishment interrogatories are too broad because they ask the garnishees if, at the time of service, "or at anytime thereafter until the return date," they had in their possession or control property or money of the judgment debtor; and, if, at the time of service "or at anytime thereafter until the return date" did the garnishees owe the judgment debtor any money or do the garnishees owe the judgment debtor any money now. (Filing No. 110 at p. 3).

Langer Electric's second motion to quash (Filing No. 144) takes issue with Plaintiffs' summonses and garnishment orders to American National Bank, NGC Group, Inc., U.S. Bank National Association, Cobalt Credit Union, Mr. Langer, and Wells Fargo USA Holdings, Inc. at Filing Nos. 122 through 127. Langer Electric contends these garnishments are improper because Nebraska law does not permit a judgment creditor to seek an order requiring a garnishee "not pay any debt" and does not permit a judgment creditor to declare any such payment as "void." (Filing No. 145 at pp. 2-3). Langer Electric continues to assert Plaintiffs' interrogatories to garnishees are overbroad, burdensome, and prejudicial to Langer Electric. (Filing No. 145 at pp. 2-6).

Of the challenged garnishments, only Bank of the Valley,[1] Todd Royer,[2] Jill Jones,[3] and Langer Properties,[4] indicated they have property of or were indebted to Langer Electric; three garnishees have not returned answers (American Express Company, Tanner Hall, and Thomas Berney); NGC Group filed objections to Plaintiffs' interrogatories on February 17, 2023, but answered "No" to the interrogatories over its objections (Filing No. 142); Mr. Langer filed answers

---

[1] As noted above, Bank of the Valley answered it had $310.75 in a checking account belonging to Langer Electric, (Filing No. 113), and Plaintiffs have filed a motion asking for the Court to order Bank of the Valley to set aside $310.75 and deliver the funds to the registry of the Court. (Filing No. 150).

[2] On February 1, 2023, Todd Royer answered he remitted $1,264.00 owed by Langer Electric to Plaintiffs' counsel by personal check. (Filing No. 112). The invoice from Langer Electric reflects the payment was due March 5, 2022. (Filing No. 112 at p. 5).

[3] On March 14, 2023, Jill Jones answered $472.00 was owed to Langer Electric and attached the invoice (Filing No. 175) and attempted to deposit that amount with the Clerk of the Court, but the Clerk did not accept the payment. (Filing No. 176).

[4] As noted above, Langer Properties first answered it owed the judgment debtor the amount of $402,457.00 with no set due date (Filing No. 115) and then subsequently filed answers stating it was not indebted to Langer Electric (Filing No. 140).

objecting to Plaintiffs' interrogatories on February 21, 2023, but answered "no," he did not have property of the judgment debtor in his possession at the time of service (Filing No. 146); all remaining garnishees denied having property or debts of Langer Electric. Plaintiffs have moved the Court for orders directing garnishees Bank of the Valley (Filing No. 150) and Langer Properties (Filing No. 137) to deposit funds into the registry of the court; Plaintiffs have also filed an application for determination of Langer Properties' liability (Filing No. 152).

As an initial matter, Langer Electric's motions to quash/vacate are moot as to those garnishees who answered they have no property or debts of Langer Electric, as Plaintiffs did not file applications to determine the liability of any of those garnishees within twenty days of those garnishees' answers. Therefore, those garnishees are already released and discharged from any liability. "[U]nder the plain language of [Neb. Rev. Stat.] § 25-1030, if a garnishor fails to file an application to determine the garnishee's liability within 20-days of when the garnishee's answers to interrogatories are filed, the statute 'prescribe[s] an unequivocal and mandatory conclusion' that the garnishee shall be released and discharged." *Huntington v. Pedersen*, 883 N.W.2d 48, 57 (Neb. 2016) (quoting *NC + Hybrids v. Growers Seed Ass'n*, 422 N.W.2d 542, 546 (Neb. 1988)). Accordingly, the Court need not revisit the garnishment summons and orders as to JP Morgan Chase Bank, N.A.; Jamie Smith; Sarah Kirkpatrick; Crystal Gordon; Seth Neben; American National Bank; NGC Group, Inc.; U.S. Bank National Association; Cobalt Credit Union; Mr. Langer; and Wells Fargo USA Holdings, Inc.; because all those garnishees have been unequivocally released and discharged from liability. Langer Electric's second motion to quash/vacate (Filing No. 144), therefore, is entirely moot because all garnishees at issue in that motion returned answers indicating they have no property of, and are not indebted to, Langer Electric. Plaintiffs did not file applications to determine the liability of any of those garnishees within twenty days of their answers; therefore, all those garnishees have been released and discharged from liability.

The Court will next turn to the garnishments to Bank of the Valley, Langer Properties, Jill Jones, Todd Royer, American Express Company, Tanner Hall, and Thomas Berney, as those garnishees returned answers indicating they had property or debts of Langer Electric or did not answer at all. Langer Electric contends those garnishments were improper because they instruct garnishees not to pay any debts "owed the Defendant when this Summons and Order was served *or at anytime thereafter until the return date hereof*[.]" (Filing No. 110 at pp. 2-3). Langer Electric

asserts Plaintiffs are "attempting to garnish more than permitted by Nebraska law by requiring the garnishee to identify and hold funds and property in its possession as of the service date and any funds and property that it may be holding in the ten days following the service date." Langer Electric points to the garnishment issued to Foundation One Bank on September 19, 2022, as evidence of Plaintiffs' improper garnishment "strategy." (Filing No. 110 at p. 3). However, neither of Langer Electric's motions sought to quash/vacate the garnishment summons and order to Foundation One Bank at Filing No. 35, and thus the propriety of that garnishment is not before the Court. Additionally, the challenged summonses and garnishment orders before the Court all advise the garnishees that they are "obligated to hold the property of every description and the credits of the Defendant in your possession or under your control at the time of the service of this Summons and Order and Interrogatories until further direction from the Court," (see, e.g., Filing No. 80), which is an accurate statement of law. See Neb. Rev. Stat. § 25-1056(1) ("Except when wages are involved, the garnishee shall hold the property of every description and the credits of the defendant in his or her possession or under his or her control at the time of the service of the summons and interrogatories until the further order of the court.").

Langer Electric also contends the garnishment papers are improper because Plaintiffs are "not legally allowed under Nebraska law to garnish funds that are not otherwise owing *and due* at the time of service" citing to Neb. Rev. Stat. § 25-1010(2)(b). (Filing No. 130 at p. 2) (emphasis added). First, section 25-1010 is inapplicable to the instant post-judgment garnishments.[5] Instead, section 25-1056(1) provides the procedures for garnishment "[i]n all cases when a judgment has been entered by any court of record and the judgment creditor . . . has filed an affidavit setting forth the amount due on the judgment[.]" Neb. Rev. Stat. § 25-1056(1). By the statute's plain language, therefore, post-judgment garnishment procedures are governed at the outset by section 25-1056(1), and thereafter, "the service of the summons and interrogatories and all further proceedings shall be in all respects the same as is provided for in sections 25-1011 and 25-1026 to 25-1031.01 unless inconsistent with this section." Neb. Rev. Stat. § 25-1056(1). Section 25-1010 and its preceding sections pertain to pre-judgment attachments and garnishment. See Neb. Rev. Stat. § 25-1010(1) (providing procedures for summons "[w]hen an affidavit is filed in a civil action containing the necessary allegations of an affidavit of attachment[.]"); Neb. Rev. Stat. § 25-1055

---

[5] Regardless, Neb. Rev. Stat. § 25-1010(2)(b) does not contain the phrase "owing and due" as supplied by Langer Electric.

("The proceedings under general attachment provided for in sections 25-1004 to 25-1041, so far as they are applicable, shall regulate the attachments authorized on claims before due."); see also, *Ins. Co. of N. Am. v. Maxim's of Neb.*, 132 N.W.2d 885, 887 (Neb. 1965) ("Sections 25-1002 to 25-1041 . . . in which [section 25-1010] is included, comprise a comprehensive act governing general attachment and regulate attachments before judgment."); *Florence Lake Invs.*, 978 N.W.2d at 321 (discussing section 25-1056(1)—not section 25-1010—when addressing "only a postjudgment garnishment" and "express[ing] no opinion regarding prejudgment garnishment proceedings.").

The Nebraska legislature's distinction between pre- and post-judgment attachment and garnishment procedures also explains the inconsistencies between section 25-1010 and section 25-1056. For example, under section 25-1010(2), the summons "shall be returnable within *five* days from the date of the issuance thereof," whereas under section 25-1056(1) summons "shall be returnable within *ten* days from the date of its issuance[.]" Additionally, section 25-1010(1) provides that a plaintiff may furnish interrogatories "respecting the matters set forth in section 25-1026," but then explicitly provides that "answers must be given in writing but *do not* need to be verified or given under oath." Section 25-1056(1) does not contain the same language. Instead, under section 25-1056(1), a plaintiff may furnish interrogatories "respecting the matters set forth in section 25-1026," and section 25-1026 in turn provides that the "garnishee shall answer, *under oath*, all the interrogatories[.]" Reading the entire language of the attachment and garnishment statutes together so they are consistent, harmonious, and sensible, as the Court must, it is clear the legislature intended post-judgment garnishments like the one at issue to be governed by section 25-1056(1), not section 25-1010.

Returning to the issue of what debts are properly garnishable, "Garnishment freezes the mutual debts and credits of the garnishee and the judgment debtor at a point in time." 38 C.J.S. Garnishment § 1 (March 2023 Update). As to debts:

> Liability that is merely unmatured at time of garnishment action is subject to garnishment if there is no question about the fact of the garnishee's liability, although the amount of that liability may be uncertain. The garnishee's debt need not be presently payable, but it must be absolutely owed to the judgment debtor in order for it to be reached by garnishment. Thus, a debt not presently due but certain to come due may be subject to garnishment. An "unmatured debt" is one in which the sum is certain and the time for payment of the debt has not yet occurred.

38 C.J.S. Garnishment § 12 (March 2023 Update) (footnotes omitted).

Langer Electric cites Neb. Rev. Stat. § 25-1029 for the proposition that "The Garnishee is required to hold, until further Order from the Court, all funds owing *and due* to the judgment debtor at the time of service."   (Filing No. 130 at p. 3).  However, this section does not state funds must be "owing *and due*."  Instead, the statute reads:

> If the garnishee answers that, at the time of the service of the summons and interrogatories upon him or her, he or she . . . was indebted to him or her, the court may order the delivery of such property and the *payment of the amount owing by the garnishee* into court*;* or the court may permit the garnishee *to retain* the property or *the amount owing*, upon the execution of an undertaking to the plaintiff by one or more sufficient sureties . . .

Neb. Rev. Stat. § 25-1029 (emphasis added).  Further, section 25-1027 provides that "a garnishee may *pay the money owing to the defendant* by him into court.  He shall be discharged from liability to the defendant for any money so paid not exceeding the plaintiff's claim." Neb. Rev. Stat. § 25-1027 (emphasis added).  Again, the statute does not state the garnishee may be discharged by paying money owing "and due."  Rather, the garnishee may discharge its obligation to repay the debt to the defendant by paying the amount owed to the defendant into court.  Similarly, section 25-1030 provides that if a garnishee "fails to comply with the order of the court, by delivering the property and paying the money *owing* into court . . .the plaintiff may file an application within twenty days for determination of the liability of the garnishee."

The Court also agrees that Langer Electric's interpretation of garnishment procedures is impractical and unworkable and would result in additional burden and inconvenience to a garnishee in derogation of the garnishment statutes' legislative purpose.  See *Spaghetti Ltd. P'ship v. Wolfe*, 647 N.W.2d 615, 622 (Neb. 2002), *disapproved of by ML Manager*, 842 N.W.2d 566 ("As a stranger to the proceedings in which a judgment has been obtained, a garnishee is normally an innocent third party exposed to inconvenience and hazards or expense of extended litigation. . . . The Nebraska Legislature sought to protect a garnishee from this often unnecessary and sometimes oppressive litigation by demanding an expeditious disposition of proceedings.").  For example, garnishee Langer Properties answered it "owed the judgment debtor the amount of $402,457.00 at the time of service of the garnishment" and that "there is no current due date established for the amount owed."  (Filing No. 115 at p. 3).  According to Langer Electric, that debt can only be garnished on the date it is "due."  Because Langer Properties states the due date

has not "been set yet,"[6] (and gives no indication of when it may be set), the judgment creditor would have to serve a garnishment summons upon Langer Properties every day, hoping to garnish the debt on the date it becomes "due," but before the garnishee pays the debt to the defendant (since Langer Electric also maintains a garnishment summons cannot instruct a garnishee not to pay the debt when it becomes due).

But, a judgment creditor would be precluded from attempting to garnish the same indebtedness with successive garnishment orders.  For example, in *Huntington*, 883 N.W.2d 48, a judgment creditor served garnishment summons on the debtor's attorney as garnishee, who answered he did not have property belonging to the debtor, and the judgment creditor did not file an application to determine the attorney's garnishment liability.  In a subsequent debtor's examination, the debtor testified he had paid the attorney a flat $15,000 fee before his attorney was served with the first garnishment.  Accordingly, the judgment creditor served a second garnishment summons upon the debtor's attorney, who again answered he had no property belonging to or owed to the debtor; this time the judgment creditor filed a motion to determine the attorney's garnishment liability.  The district court found that when the attorney filed his answers to the first garnishment interrogatories, he was in possession of the $15,000 attorney fee payment; however, because the judgment creditor did not file an application to determine the attorney's liability within 20-days of his answers to the first garnishment interrogatories, the attorney "stood 'released and discharged as to those funds'" and the judgment creditor was "precluded from collecting those same funds in the second garnishment proceeding." *Id.* at 52-53.   On appeal, the Nebraska Supreme Court agreed with the district court, concluding:

> Because the first garnishment interrogatories were addressed to any property or indebtedness [the attorney] owed . . .  and [the attorney] was found to have been in possession of the $15,000 attorney fee at the time summons were served on [him] in the first garnishment, the unchallenged first garnishment answers resulted in a judgment on the merits in favor of [the attorney] as garnishee as to the subject of the first proceeding. The question of [the attorney's] liability which was raised in the first garnishment is the same ultimate question raised in the [judgment creditor's] second garnishment proceeding, and therefore, the [judgment creditor's] motion to determine [the attorney's] garnishment liability in connection with the second garnishment proceeding was effectively precluded.

---

[6] However, generally, "If there is no agreement as to the time of repayment of money loaned, the amount thereof is in law due immediately[.]" *Grant v. Williams*, 62 N.W.2d 532, 535 (Neb. 1954).

*Id.* at 59; accord, *NC+ Hybrids*, 422 N.W.2d 545 (holding that "when a garnishee answers and denies an obligation or indebtedness to the judgment debtor, but the plaintiff fails to contest, controvert, or traverse such denial by the garnishee, a subsequent judgment of discharge, as the result of the plaintiff's failure to respond, is a judgment on the merits as an adjudication of the garnishee's liability to the plaintiff for the obligation or indebtedness to the judgment debtor which is the subject of the garnishment proceeding.").

Further, Langer Electric has not asserted Plaintiffs have *actually* improperly garnished property that came into the possession of the garnishees, or debts that were acquired, in the ten days after service of the summons. Garnishees Jill Jones and Todd Royer answered they owed Langer Electric money for work performed by Langer Electric, and both attached invoices reflecting the amount owed and due to Langer Electric. (Filing No. 112; Filing No. 176). Bank of the Valley answered it had in its possession a checking account of the judgment debtor containing $310.75. (Filing No. 113). Langer Properties answered it owed Langer Electric $402,457.00 at the time of service of the garnishment. (Filing No. 115). If an improper garnishment had occurred, the proper remedy would not be to vacate the garnishment orders, but instead to modify or correct the amount garnished. See, e.g., *LincOne Fed. Credit Union v. Moore*, No. A-21-693, 2022 WL 2309039, at *5 (Neb. Ct. App. June 28, 2022) (rejecting the defendant's contention that garnishment orders should have been vacated because the orders withheld wages in excess of the amount provided by statute due to a mistake in the garnishment affidavit; such error "involve[d] a mistake in the garnishment orders, not a challenge to the power of the court to enter the orders or the procedure employed by the court in issuing those orders. Accordingly, we reject [the defendant's] contention that the courts erred in not vacating the orders on the basis that they were void when entered." The proper remedy was an order awarding the amount that was improperly over-garnished).

The Court will also deny Langer Electric's motion to compel Plaintiffs to use the garnishment forms promulgated by the Nebraska Supreme Court. Although Neb. Rev. Stat. § 25-1011 directs the Nebraska Supreme Court to "promulgate uniform garnishment forms for use in all courts in this state," none of the garnishment statutes mandate use of those forms by litigants. See, e.g., *Mahmood v. Mahmud*, 778 N.W.2d 426, 431 (Neb. 2010) (rejecting argument that "filing of the correct form is strictly necessary" and stating, "although the applicable statute required that

the administrator for the courts develop model forms and make such forms available, the statute did not expressly require petitioners to use those forms.").  Indeed, the forms themselves contain the disclaimer that they are "provided as a public service but should be reviewed by your attorney." Additionally, the available form instructions and interrogatories for garnishment are entitled, "Employers' Instructions for Garnishment Type [A through F]" and primarily contain information and questions regarding various wages and earnings; requiring a judgment creditor to use these forms verbatim for all garnishments, including to non-employer garnishees, makes little sense.  So, although the statute directs the Nebraska Supreme Court to promulgate uniform forms, and those forms are posted as a public service, the statute does not require that *only* those forms be used. Instead, if a judgment creditor's affidavit and service of summons and interrogatories comply with the substantive provisions of Neb. Rev. Stat. § 25-1056(1), and §§ 25-1011 and 25-1026 to 25-1031.01, then the garnishments are proper.

In the same vein, Langer Electric maintains that the Nebraska garnishment forms permit a garnishor to only propound two questions to garnishees unrelated to wages: (1) Do you have property belonging to the judgment debtor, or credits or monies owed to the judgment debtor, whether due or not, other than the earnings described above? and (2) If yes, specify: a. Property of the judgment debtor in your possession, b. Amount of money or credits you owe the judgment debtor, other than earnings, and c. Date the money or credits were due, or will be due.  (Filing No. 145 at pp. 3-4).  However, section 25-1056(1) does not require a plaintiff to use the form interrogatories promulgated by the Nebraska Supreme Court, nor does this statute limit a plaintiff to propounding only two interrogatories.  Instead, the summons can require the garnishee "to answer written interrogatories *to be furnished by the plaintiff* . . . respecting the matters set forth in section 25-1026."  Neb. Rev. Stat. § 25-1056(1) (emphasis added).  Section 25-1026 requires a garnishee to answer under oath "all the interrogatories put to him *touching the property of every description* and credits of the defendant in his possession or under his control at the time of the service of the summons and interrogatories, and he shall disclose truly the amount owing by him to the defendant, *whether due or not*[.]" Neb. Rev. Stat. § 25-1026 (emphasis added).  As will be discussed further below, "[i]n a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings" for disposition of a garnishee's liability.  *Huntington*, 883 N.W.2d at 59.  Therefore, it is important for a plaintiff to be permitted

16

to furnish interrogatories to a garnishee within these parameters so that a garnishee's liability can be fully determined by the Court in a proceeding under section 25-1030.

In sum, under the applicable statutes, if a judgment creditor's affidavit sets forth the necessary allegations to place a judgment debtor on notice, the summons will be issued. Neb. Rev. Stat. § 25-1056(1). Plaintiffs' affidavit in this case complied with the statutory requirements. Langer Electric's challenges to the disputed garnishments are either moot because the garnishees have already been released and discharged from liability or have not actually resulted in an improper garnishment. Plaintiffs had the right to serve the interrogatories "touching the property of every description" of Langer Electric at the time of service, and the amounts "owing by [the garnishee] to the defendant, whether due or not" on the garnishees, the garnishees were obligated to fully and truthfully answer interrogatories under oath, and the garnishees were obligated to hold the property and debts of the judgment debtor in its possession upon receipt of the summons. This Court will not impose a requirement on Plaintiffs to use the Nebraska Supreme Court forms since there is no such requirement in Nebraska's garnishment statutes. Because the Court finds Langer Electric's motions to quash should be denied, the Court will also deny Langer Electric's request for attorneys' fees.


II.     **Langer Properties' Motion for Leave to Amend Garnishment Answers, and Plaintiffs' Motions for Determination of Langer Properties' Liability and for Release of Funds to the Court**

On February 6, 2023, Mr. Langer answered Plaintiffs' garnishment interrogatories served on or about January 23, 2023, in his capacity as "owner" of Langer Properties. Langer Properties objected to the interrogatories but answered over its objections that it "owed the judgment debtor the amount of $402,457.00 at the time of service of the garnishment" and that "there is no current due date established for the amount owed." (Filing No. 115 at p. 3). On February 14, 2023, based upon Langer Properties' interrogatory answers, Plaintiffs filed a motion asking the Court to order Langer Properties to set aside $402,457.00 and, within twenty (20) days of any amount of such indebtedness becoming due, available, or otherwise payable to Langer Electric, deliver those funds to the registry of court. (Filing No. 137). The next day, on February 15, 2023, Mr. Langer, as owner of Langer Properties, executed different answers to the same garnishment interrogatories, answering "No" to both interrogatories, and did not identify a $402,457.00 debt to Langer Electric,

and filed those answers February 17, 2023. (Filing No. 140). On February 23, 2023, based upon Langer Properties' answers to interrogatories, Plaintiffs filed an Application for Determination of Garnishee Liability (Filing No. 152). Langer Properties objects to that motion, but ultimately requests that the Court hold a jury (or bench) trial and find it is not liable as garnishee and release it from this case, with prejudice. (Filing No. 168).

One month after filing its second answers to interrogatories and after Plaintiffs filed its application to determine Langer Properties' liability, on March 17, 2023, Langer Properties filed a motion seeking leave to "amend" its garnishment interrogatory answers. (Filing No. 172). Mr. Langer's affidavit in support of the motion states he answered the garnishment interrogatories "a second time by mistake, when [he] really intended to stand on the previous answers"; he "did not intend to execute and file two different sets of garnishment answers on behalf of Langer Properties"; and "The first set of interrogatory answers by Langer Properties . . . are the correct answers, and those are the answers [he is] asking the Court to recognize and rely upon  as part of this lawsuit[.]" (Filing No. 174-1 at p. 2). Conspicuously absent from Mr. Langer's affidavit and Langer Properties' brief is an explanation as to *why* Mr. Langer mistakenly executed a second set of answers to interrogatories answering Langer Properties owed no debts to Langer Electric, and why he did so one day after Plaintiffs filed a motion asking the Court to order Langer Properties to set aside $402,457.00 to be delivered to the registry of the court when that debt became due.

Under Neb. Rev. Stat. § 25-1027, a garnishee owing a debt to the defendant may be discharged from liability to the defendant by "pay[ing] the money owing to the defendant by him into court."  See also *Myers v. Christensen*, 776 N.W.2d 201, 205 (Neb. 2009) ("A garnishee can be discharged if he chooses to 'pay the money owing to the defendant by him' into court.") (quoting Neb. Rev. Stat. § 25-1027).  "If the garnishee answers that, at the time of the service of the summons and interrogatories upon him or her, he or she was . . .  was indebted to [the defendant], the court may order . . . the payment of the amount owing by the garnishee into court[.]"  Neb. Rev. Stat. § 25-1029.  "But if the garnishee does not pay the funds into court and the garnishor is not satisfied with the garnishee's answers to the interrogatories, the garnishor may file an application to determine the liability of the garnishee, and "may allege facts showing the existence of indebtedness of the garnishee to the defendant or of the property and credits of the defendant in the hands of the garnishee."  *Myers*, 776 N.W.2d at 205 (quoting Neb. Rev. Stat. § 25-1030).

Plaintiffs have timely filed an application (Filing No. 152) to determine Langer Properties' garnishee liability within twenty days of both of Langer Properties' answers to interrogatories. See Neb. Rev. Stat. § 25-1030. "In a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings for disposition of the liability issue." *Huntington*, 883 N.W.2d at 59. "[I]t is generally the rule that a garnishee owes a duty to act in good faith and answer fully and truthfully all proper questions or interrogatories presented to him, or to in some appropriate manner make proper disclosure of all relevant facts within his knowledge at the time of making answer concerning his then-present indebtedness to the debtor[.]" *W. Smelting & Ref. Co. v. First Nat. Bank of Omaha*, 35 N.W.2d 116, 123 (Neb. 1948) (citations omitted).

Because answers to interrogatories are the "pleadings" in a garnishment proceeding, Langer Properties cites the liberal standard for leave to amend pleadings when justice so requires as set forth in Fed. R. Civ. P. 15(a)(2). (Filing No. 173 at p. 2). However, "[a]n amended pleading is designed to include matters occurring before the filing of the [original pleading] but either overlooked or not known at the time." *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101 (W.D. Mo. 1939)); see also *Pleading*, Black's Law Dictionary (11th ed. 2019) (defining an amended pleading as one "that replaces an earlier pleading and that contains matters omitted from or not known at the time of the earlier pleading."). Strictly speaking, Langer Properties is not seeking to amend its answers to interrogatories, since it is asking the Court to ignore its later-prepared and filed answers to garnishment interrogatories at Filing No. 140, and instead rely on its originally filed answers at Filing No. 115. As such, Langer Properties' motion is more akin to a motion to strike a document purportedly filed in error. Rule 12(f) of the Federal Rules of Civil Procedure permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001)).

Under the circumstances, the Court will not strike Langer Properties' second filed answers. Mr. Langer completed two sets of answers to interrogatories on behalf of Langer Properties, initially acknowledging a debt to Langer Electric, and later denying indebtedness to Langer Electric. Langer Properties did not provide an explanation for this discrepancy, aside from

19

generally asserting the second answers were executed in error.  As such, the Court will let both answers stand and be explored during the proceedings on Plaintiffs' timely filed application to determine Langer Properties' garnishee liability under Neb. Rev. Stat. § 25-1030.  Langer Properties' answers to interrogatories and Plaintiffs' application for determination of the liability of the garnishee "shall constitute the pleadings upon which trial of the issue of the liability of the garnishee shall be had."  Neb. Rev. Stat. § 25-1030.  Because "[t]he trial of the determination of the liability of the garnishee shall be conducted the same as in a civil action," Neb. Rev. Stat. § 25-1030.02, and the parties have not consented to disposition of dispositive matters by the undersigned magistrate judge, the trial must be set before the assigned district judge.  Accordingly, a hearing is set before the undersigned magistrate judge at 9:30 a.m. on May 16, 2023, in Courtroom No. 6, Roman L. Hruska Courthouse, 111 S. 18th Plaza, Omaha, Nebraska, to discuss scheduling and other matters necessary to set the trial of the determination of Langer Properties' liability before Chief Judge Robert F. Rossiter.

Because the Court is granting Plaintiffs' application to determine Langer Properties' liability as garnishee, for the time being the Court will deny without prejudice Plaintiffs' motion for an order directing Langer Properties to set aside $402,457.00 and deliver to the registry of the court that amount within twenty days after it becomes payable to Langer Electric.  (Filing No. 137).

### III.     Motion for Order for Garnishee Bank of the Valley to Pay Funds into Court

Finally, Plaintiffs have moved for an order directing garnishee Bank of the Valley to set aside $310.75, and within 20 days, deliver the funds to the registry of the court.  (Filing No. 150). No response or objection to this motion has been filed.  And, as discussed above, the Court finds Plaintiffs' garnishment summons and orders should not be quashed or vacated. Therefore, after review, the Court will grant this motion and direct Bank of the Valley to deposit such funds to the court's registry as requested.  Accordingly,

**IT IS ORDERED:**

1.  Langer Electric's Motion to Quash Summons and Orders of Garnishment, or Alternatively to Vacate Pending Garnishment Orders (Filing No. 109) is denied;

2. Plaintiffs' Motion for Order for Garnishee [Langer Properties and Development LLC] to Pay Funds into Court (Filing No. 137) is denied without prejudice pending the Court's determination of Langer Properties' garnishee liability pursuant to Neb. Rev. Stat. § 25-1030;

3. Langer Electric's Motion to Quash Summons and Orders of Garnishment, or Alternatively, to Vacate Pending Garnishment Orders, and to Compel Plaintiffs' Counsel to Use the Official Forms Prescribed by the Nebraska Supreme Court and for Attorney's Fees (Filing No. 144) is denied;

4. Plaintiffs' Motion for Order for Garnishee [Bank of the Valley] to Pay Funds into Court (Filing No. 150) is granted;

   a. Bank of the Valley is ordered to set aside $310.75 on behalf of the plaintiffs and, within twenty days, deliver said funds to the Court to partially satisfy the defendant's adjudged indebtedness.

   b. The Clerk of the Court is directed to send payment of those funds to the plaintiffs by check or money order, payable to IBEW Local Union No. 22/NECA Fringe Benefit Funds" and delivered to the office of the Plaintiffs' counsel, Blake & Uhlig, P.A., at 6803 West 64th Street, Suite 300, Overland Park, KS 66202, to the attention of Frederick Zarate.

5. Garnishee Langer Properties and Development LLC's Motion for Leave to Amend Answers to Garnishment Interrogatories (Filing No. 172) is denied;

6. A hearing to discussing scheduling and other matters regarding Plaintiffs' Application for Determination of Garnishee Langer Properties and Development LLC's Liability (Filing No. 152) is set for **9:30 a.m. on May 16, 2023**, in Courtroom No. 6, Roman L. Hruska Courthouse, 111 S. 18th Plaza, Omaha, Nebraska before the undersigned magistrate judge.

Dated this 21st day of April, 2023.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge